# Exhibit A

# HANGAR LEASE AGREEMENT

THIS HANGAR LEASE AGREEMENT (this "Lease Agreement") is made effective the First day of July, 2012, by and between AIRPORT PROPERTIES, LLC ("Lessor") and Olga Usova and Dream World Partners ("Occupant").

The parties agree as follows:

1. NOTICE. THE PARTIES AGREE THAT THIS LEASE AGREEMENT AND THE RIGHTS, DUTIES AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND SUBJECT TO THE CALIFORNIA SELF-SERVICE STORAGE FACILITY ACT, BUSINESS AND PROFESSIONS CODE SECTIONS 21700, ET SEQ. OCCUPANT'S PROPERTY WILL BE SUBJECT TO A CLAIM OF LIEN AND MAY BE SOLD TO SATISFY THE LIEN OF THE RENT OR OTHER CHARGES DUE REMAIN UNPAID FOR FOURTEEN (14) CONSECUTIVE DAYS, AS AUTHORIZED BY THE CALIFORNIA SELF-SERVICE STORAGE FACILITY ACT.

2. PURPOSE AND TERM. Lessor hereby leases to Occupant and Occupant hereby hired from Lessor, Hangar space number B-6 as more specifically described on the signature pages hereof (the "Hangar"), situated at the Camarillo AIRPORT (the "Airport"), for storage of Occupant's aircraft identified as aircraft model/type: Cirrus, N327BB. For a month to month term commencing on the July 1, 2012 and ending on the 31st day of July 2012. Should Occupant continue to make use of the Hangar after the expiration of the term set forth above, with the consent of Lessor, such use shall be deemed to be from month-to-month with all other terms and conditions of this Lease Agreement remaining in full force and effect.

3. USE. The Hangar may not be used for any purpose other than for storage and minor maintenance and repair of Occupant's aircraft. Occupant acknowledges that he or she is specifically prohibited from doing or performing any of the following uses on or about the Hangar:

 (a) Fueling of aircraft, except by dealers so authorized by the Airport;

 (b) Conducting any use or business other than storage of an Aircraft;

 (c) Selling or servicing of an aircraft on a commercial basis;

 (d) Occupancy of the Hangar by anyone operating pursuant to an FAA Part 135 Certificate (Charter Operations) or any charter activity for hire;

 (e) Flight training operations on a commercial basis;

 (f) Working on aircraft except within the legal limits allowed by the FAA for persons working on their own aircraft;

 (g) Servicing of aircraft by licensed aircraft mechanics who do not have authorization to do business on or at the Airport; and

-1-

APRL\46637\715894.1

(h)     Any other activities which are in direct competition with the accepted Airport fixed base operator activities as determined by the Airport.

4.     RENT AND CHARGES. Occupant shall pay as rent, in advance, on the first (1st) day of each month, commencing July 1, 2012, at the Airport Properties LLC (APL) P.O. Box, Concord, CA, and the amount of One Thousand Five Hundred Dollars ($1,500.00). In the event that the entire rental payment is not received by Lessor within ten (10) days after the due date, Occupant shall pay a late charge of Fifty Dollars ($50.00). Occupant further agrees to pay a fee of Twenty Five Dollars ($25.00) for each dishonored check. Additionally, in the event any rent or other charges not paid when due, Occupant shall pay interest to Lessor on any such unpaid rent or obligation in the amount of eight percent (8%) per annum or the maximum rate permitted by law, whichever is less, until such rent and other charge is paid in full.

5.     SECURITY DEPOSIT. Upon the execution of this Lease Agreement by Occupant, Occupant shall deliver to Lessor a security deposit in an amount equal to Zero Dollars ($0.00) as security for Occupant's faithful performance of all of Occupant's obligations under this Lease Agreement. If Occupant fails to pay any rent or other charges due hereunder, or otherwise default with respect to any provision of this Lease Agreement, Lessor may use, apply or retain all or any portion of the security deposit for the payment of such rent or any other charge not paid by Occupant in a timely manner or any other sum to which Lessor may become obligated by reason of Occupant's default, or to compensate Lessor for any loss or damage which Lessor may suffer thereby. If Landlord so uses or applies all or any portion of the security deposit, Occupant shall, within ten (10) days after written demand therefor, deposit cash with Lessor in an amount sufficient to restore the security deposit to the full amount then required of Occupant.

6.     INCREASE IN RENT. After the expiration of the term set forth above, Lessor shall have the right, in its sole discretion, to increase the rent to be paid hereunder upon giving Occupant no less than thirty (30) days prior written notice of such rent increase.

7.     ASSIGNMENT. Occupant agrees not to assign, sublet or otherwise permit occupancy or use of the Hangar to any other person or entity whatsoever. Any assignment or subletting of the Hangar shall automatically be considered invalid and shall constitute a default under the terms of this Lease Agreement.

8.     MAINTENANCE OF HANGAR; COMPLIANCE WITH RULES. Occupant agrees to maintain the Hangar in a clean and orderly condition at all times, and in accordance with California Department of Industrial Safety and Fire Codes which may apply to aircraft hangar storage and other applicable federal, state and local laws and ordinances. Additionally, Occupant shall comply with all of the rules and regulations regarding the use and storage of aircraft imposed by the Camarillo Airport. Occupant shall become familiar with and shall at all times abide by all of Lessor's rules and regulations relating to use of the Hangar, whether promulgated before or after the execution of this Lease Agreement, and in particular Occupant shall abide by the following regulations:

(a)     All power tools used by Occupant shall be grounded;

(b)     Paints, solvents, thinners, and other flammable liquids or materials will be used only when the Hangar door is open to provide ventilation;

(c)     Combustible materials must be stored in metal containers and closed when not in use;

(d)     There shall be no open flames in the Hangar at any time; and

-2-

      (e)    There shall be no smoking gin the Hangar at any time.

Additionally, Occupant shall not use or permit the use of the Hangar or any area in and around the Hangar in any manner that will tend to create wastes or a nuisances or shall tend to disturb other occupants of other hangars owned by Lessor.

9.    <u>CONDITION OF THE PREMISES</u>. Occupant hereby acknowledges that it has thoroughly inspected the Hangar and hereby agrees to accept possession of the Hangar in accordance with the terms of this Lease Agreement in its as-is, where-is condition, without any representations or warranties from Lessor with regard to the condition of the Hangar or any surrounding area whatsoever. Specifically, Occupant hereby acknowledges that Lessor shall not be liable to Occupant for any damage or injury to Occupant, or its agents, employees, contractors and other persons or to any property which may be stored in or about the Hangar and Occupant shall assume all liability for any such damage or injury. Furthermore, Occupant hereby acknowledges that neither Lessor nor any agent of Lessor has made any representation or warranty with regard to the condition of the Hangar or with regard to the present or future suitability of the Hangar for the use permitted under this Lease Agreement.

10.    <u>HAZARDOUS MATERIALS</u>. Except in strict compliance with all governmental approvals, applicable laws and regulations pertaining to hazardous materials and in accordance with the additional provisions of this Section 10, Occupant shall not cause or permit the presence, use, handling, generation, emission, release, discharge, storage or disposal of any hazardous materials on, under, in or about the Hangar and Occupant shall not cause or permit the transportation of any hazardous materials to or from the Hangar. Occupant shall indemnify, protect, defend and hold harmless Lessor and the Airport from and against all liability, and foreseeable consequential damages, penalties, expenses and costs of any required or necessary remediation, repair, removal, cleanup or detoxification of the Hangar and any surrounding properties and from and against the preparation of any cleanup, remediation, closure or other required plans, whether such action is required or necessary prior to or following the expiration of earlier termination of this Lease Agreement to the full extent the same is attributable to the use, handling, generation, emission, release, discharge, storage or disposal of Hazardous Materials by Occupant, Occupant's agents, employees or subtenants or contractors during the term of this Lease Agreement. Occupant shall alt all times notify the Airport and Lessor of any Hazardous Materials present, used, generated, handled, emitted, released, discharged, stored or disposed of on or from the Hangar. Notwithstanding the foregoing, such notice shall not be required for hazardous materials present on the premises in reasonable quantities which are commonly used in aircraft storage facilities, including, but not limited to, cleaning materials, motor oils and hydraulic fluids, provided such hazardous materials are used and disposed of in accordance with the law. Lessor and Airport shall have the right to inspect the Hangar on 24-hour prior notice for compliance with the provisions of this Section 10. The indemnification provisions of this Section shall survive the expiration or earlier termination of this Lease Agreement.

As used herein, the term "hazardous materials" means any toxic substance, hazardous substance, hazardous material or hazardous waste, pollutant or contaminant which is or during the term of this Lease Agreement becomes regulated by any local governmental authority, the State of California, or the United States Government, including, but not limited to, any material or substance which is (a) defined as a "hazardous waste," "extremely hazardous waste," or "restricted hazardous waste" under Sections 25115, 25117 or 25112.7, or listed pursuant to Section 25140 of the California Health and Safety Code, Division 20, Chapter 6.5 (Hazardous Waste Control Law); (b) defined as a "hazardous substance" under Section 25316 of the California Health and Safety Code, Division 20, Chapter 6.8 (Carpenter-Presley-Tanner Hazardous Substance Account Act); (c) listed as a chemical known to cause cancer or reproductive toxicity pursuant to Section 6380 of the California Labor Code, Division 5, Chapter 2.5 (Hazardous Substances Information and Training Act); (d) defined as a "hazardous waste" pursuant to Section 1104 of the Resource Conservation

-3-

APRL\46637\715894.1

and Recovery Act, 42 U.S.C. Sections 6901, et seq. (42 U.S.C. § 6903); or defined as a "hazardous substance" pursuant to Section 1.01 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sections 9601, et seq. (42 U.S.C. § 9601). The term "Hazardous Materials" shall not include any such materials which, at the time of any use, handling, generation, release, discharge, storage or disposal by Occupant was not then regulated as provided above, or was handled, generated, used, released, discharged, stored or disposed of, on or about the Hangar and/or surrounding premises in strict compliance with applicable law.

11. INSURANCE. Occupant agrees to maintain in full force and effect during the term of this Lease Agreement, and any extension thereof, a policy of insurance in the minimum amount of One Million Dollars ($1,000,000) for bodily injury or death and One Million Dollars ($1,000,000) for property damage. Such insurer shall be reasonably acceptable to Lessor. Occupant shall, at the initiation of this Lease Agreement, provide Lessor written evidence of such insurance and such insurance policy shall provide that it shall not be cancelled without at least thirty (30) days prior written notice to Lessor. <u>Lessor and Ventura County Department of Airports shall be named as an additional insured on such policy and such insurer shall specifically waive any right of subrogation against Lessor.</u> In the event that Occupant fails to provide adequate insurance, as set forth above, or fails to provide Lessor with satisfactory evidence of such insurance, Lessor may, but is not obligated to, purchase such insurance. The expense of such insurance coverage shall be added to the rental payment otherwise due in the following month, and shall be paid by Occupant at the same time as such rental payment is due. A delinquency in payment of such expense shall be treated for all purposes as a delinquency in payment of rent.

12. ALTERATIONS. Occupant shall not alter any existing fixtures or improvements or alter the Hangar walls, floor or ceiling in any manner; nor shall Occupant add fixtures or improvements or in any other way modify the Hangar without the express and prior written approval of Lessor. Any and all such work approved by Lessor, in its sole and absolute discretion, shall be conducted at Occupant's sole cost and expense. All fixtures, improvements and additions made in or upon the Hangar, whether by Lessor or by Occupant, shall, at Lessor's election, become Lessor's property and shall remain upon the Hangar at the termination of this Lease Agreement, however terminated, without any compensation being paid by Lessor to Occupant. Notwithstanding the foregoing, however, in the event Lessor elects, Occupant shall be required to remove any such alterations or improvements or fixtures added to the Hangar by Occupant during the term of this Lease Agreement prior to the termination of this Lease Agreement. In such event, Occupant shall cause the Hangar to be returned to Lessor in the same condition the Hangar was in at the commencement of this Lease Agreement, normal wear and tear excepted.

13. <u>DELINQUENCY IN RENT; RIGHTS OF LESSOR</u>. When any part of the rent or other charges due from Occupant remain unpaid for thirty (30) consecutive dates, Lessor shall be entitled to terminate the right of OCCUPANT TO USE THE HANGAR BY SENDING TO OCCUPANT A PRELIMINARY LIEN NOTICE, at Occupant's last known address, and to the alternative address, if any, provided by Occupant and set forth herein, by Certified Mail, postage prepaid, containing the following:

(a) An itemized statement of Lessor's claim showing the sums due at the time of the notice and the date when the sums became due;

(b) A statement that Occupant's right to use the Hangar will terminate on a specified date (not less than fourteen (14) days after the mailing of the notice) unless all sums due are paid by Occupant prior to the specified date;

(c) A notice that Occupant may be denied access to the Hangar after the termination date of the sums are not paid, and that a Lessor's lien may be imposed thereafter; and

-4-

(d)     The name, street address and telephone number of Lessor whom Occupant may contact to respond to the notice.

If a Preliminary Lien Notice of the type set forth above has been sent, and the total sum due has not been paid as of the date specified in the notice, then a lien imposed by the California Self-Service Storage Facility Act, Business & Professions Code Sections 21700, et seq., shall attach as of the date specified, and Lessor may deny Occupant access to the Hangar, enter the Hangar, and remove any property found therein to a place of safe-keeping. Lessor shall be entitled to exercise all rights provided by the CALIFORNIA SELF-SERVICE STORAGE FACILITY ACT, Business & Professions Code Sections 21700, et seq., including, WHEN APPROPRIATE, THE RIGHT TO SELL OCCUPANT'S PROPERTY IN ORDER TO SATISFY LESSOR'S LIEN. The rights provided by this Lease Agreement and by the California Self-Storage Facility Act shall be in addition to and shall not limit all other rights provided by law to a creditor.

14.     OTHER DEFAULT. In the event that Occupant violates any of the terms hereunder (other than the obligation to pay rent or other charges) then Lessor may, at its option, provide Occupant with a notice stating that if such violation is not cured within thirty (30) days of the date of such notice, then this Lease Agreement shall automatically terminate. Occupant agrees that in the event of such termination, Occupant shall immediately surrender possession of the Hangar to Lessor and remove therefrom all of Occupant's property, and if Occupant does not immediately notify Lessor of surrender of the Hangar and notify Lessor that occupant's property has been removed, Lessor may immediately re-enter the Hangar therefrom. So long as Lessor reasonably believes that no individual is present in the Hangar at the time, Lessor shall be free to forcibly enter the Hangar by removal of or alteration of any locks, and the parties agree that any such forcible entry shall not constitute a trespass, breach of the peace, or forcible entry and detainer. In the event that, as a result of such actions on the part of Lessor, any expenses or costs are incurred by Lessor, then Lessor may treat such costs or expenses as rent, for all purposes, and may recover from Occupant such costs or expenses; provided, however, that Lessor first proceeds according to and in compliance with Section 11 hereof and with the terms of the California Self-Service Storage Facility Act.

In the event of the breach of any of the provisions of this Lease Agreement, Occupant shall be liable to Lessor for all damages suffered by Lessor as a result of such breach in addition to any other damages Lessor may be entitled to in accordance with the terms of this Lease Agreement.

15.     TERMINATION. During the initial term of this Lease Agreement, as set forth above, and so long as Occupant is in compliance with all of its terms, this Lease Agreement shall not be terminated except upon mutual written consent of the parties. After the expiration of the initial term of this Lease Agreement, this Lease Agreement may be terminated by either party upon giving at least thirty (30) days prior written notice to the other party.

16.     COMPLIANCE WITH GROUND LEASE. Occupant hereby acknowledges that this Lease Agreement is subject to and subordinate to that certain Ground Lease (the "Ground Lease") entered into between Lessor and the County of Ventura. Occupant shall at all times fully and faithfully observe, perform and discharge all obligations which are binding upon Lessor as "Tenant" under the terms of the Ground Lease, to the extent the same do not conflict with the provisions of this Lease Agreement or duplicate obligations imposed on Occupant hereunder. Occupant hereby acknowledges that it has had an opportunity to review the Ground Lease.

This Lease Agreement shall automatically terminate notwithstanding anything herein to the contrary, upon any termination of the Ground Lease for any reason whatsoever. Additionally, Lessor shall

be entitled to exercise any termination right granted to Lessor as "Tenant" under the Ground Lease without incurring any liability to Occupant under this Lease Agreement.

17.     INDEMNITY.  Occupant shall indemnify and hold harmless Lessor, its directors, officers, employees and agents, from and against any and all claims arising from Occupant's use of the Hangar, or from any activity, work or things done, permitted or suffered by Occupant in or about the Hangar or elsewhere and shall further indemnify and hold harmless Lessor, its directors, officers, employees and agents, from and against any and all claims arising from any breach or default in the performance of any obligation on Occupant's part to be performed under the terms of this Lease Agreement or arising from any negligence of Occupant, or any of Occupant's agents, contractors, guests, invitees or employees, and from and against all costs, attorneys' fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon; and in case any action or proceeding be brought against Lessor, its directors, officers, employees and agents, by reason of any such claim, Occupant upon notice from Lessor shall defend the same at Occupant's expense by counsel satisfactory to Lessor.

18.     DAMAGE AND DESTRUCTION.  In the event of the damage or destruction of all or any portion of the Hangar, Lessor shall have the election of immediately terminating this Lease Agreement; provided, however, that nothing in this Section 18 is intended to relieve Occupant of any of its obligations under this Lease Agreement with regard to any such damage and destruction.

19.     SUCCESSORS IN INTEREST.  Subject to the restrictions upon assignment as set forth in Section 7 herein, this Lease Agreement shall be in favor of and bind the heirs, executors, administrators, successors and assigns of the parties hereto.

20.     ESTOPPEL CERTIFICATE.  Occupant shall within ten (10) days written notice from Lessor execute, acknowledge and deliver to Lessor a statement in writing certifying that this Lease Agreement is unmodified and in full force and effect and the date to which rent has been paid in advance, if any, and acknowledging that there are not, to Occupant's knowledge, any uncured default on the part of Lessor.  Occupant hereby acknowledges that such statement may be conclusively relied upon by any prospective purchaser or encumbrancer of the Hangar or any other property of which the Hangar is a part.

21.     NOTICES.  Any notice herein required or permitted to be given or served hereunder, whether pursuant to the terms of this Lease Agreement or any provision of law, shall be served by Certified Mail, postage prepaid, to the respective addresses set forth herein and, in the case of Occupant, to the alternative address set forth herein, or at such other address as the party to be notified may from time to time designate in writing.

For purposes of this Lease Agreement, Lessor's address to which notices and rent payment may be sent is as follows:

> Airport Properties LLC
> P.O. Box 239
> Alamo, CA 94507
> Attn: Jerry Alves

APRL\46637\715894.1

For purposes of this Lease Agreement, Occupant's address to which notices may be sent is as follows:

> Olga Usova
> Dream World Partners
> 9701 Wilshire Blvd #1021
> Beverly Hills, CA 90210
>
> E-mail: lolis_smc@yahoo.com
>
> Cell: 310-200-4395

Occupant is specifically requested to provide below the name and address of another person to whom Preliminary Lien Notice Notices and subsequent notices pursuant to the California Self-Service Storage Facility Act may be send:

> Ilia Zavailov
> 9701 Wilshire Blvd #1021
> Beverly Hills, CA 90210
>
> E-mail: property79@yahoo.com
>
> Cell: 310-200-8875

22. **ENTRY OF HANGAR.** Occupant consents to Lessor's entry and inspection of the Hangar during the term of this Lease Agreement, and any extension thereof, without notice to Occupant, to determine compliance with the terms hereof, for maintenance or repairs which may be required or for any other reasonable purpose.

23. **TAXES.** Occupant shall pay all taxes assessed on all personal property, including Occupant's aircraft, in a timely manner and within ten (10) days prior to delinquency.

24. **CONDEMNATION.** If all or any portion of the Hangar or all or any portion of Lessor's property of which the Hangar is a part is taken by the power of eminent domain or sold under the threat of the exercise of such power, this Lease Agreement shall automatically terminate as of the date the condemning authority takes title or possession, whichever occurs first, and Occupant shall not be entitled to any portion of such award whatsoever.

25. **ATTORNEYS' FEES.** In the event any action is brought to enforce or interpret the provisions of this Lease Agreement, the prevailing party in any such action shall be entitled to an award of all attorneys' fees and experts' fees as may be awarded by the court.

26. **ENTIRE AGREEMENT.** This Lease Agreement contains the entire agreement of the parties hereto, and supersedes any prior written or oral agreements between them concerning the subject matter contained herein.

27. **WAIVERS.** No waiver by Lessor of any provision of this Lease Agreement shall be deemed a waiver of any other provision hereof or any subsequent breach by Occupant of the same or any other provision. Lessor's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of Lessor's consent to or approval of any subsequent act by Occupant. The acceptance of rent hereunder by Lessor shall not be a waiver of any preceding breach by Occupant of any provision hereof

other than the failure of Occupant to pay the particular rent so accepted, regardless of Lessor's knowledge of such precedent breach at the time of acceptance of such rent.

28. CUMULATIVE REMEDIES. No remedy or election hereunder shall be deemed exclusive by shall, wherever possible, be cumulative with all other remedies at law or in equity.

29. SECURITY MEASURES. Occupant hereby acknowledges that Lessor shall have no obligation whatsoever to provide guard service or other security measures for the benefit of the Hangar or Occupant. Occupant assumes all responsibility for the protection of Occupant, its agents and invitees, and the property of Occupant and of Occupant's agents and invitees from acts of third parties.

30. SEVERABILITY. The invalidity of any provision of this Lease Agreement as determined by a court of competent jurisdiction shall in no way affect the validity of any other portion hereof.

31. GOVERNING LAW. The construction of this Lease Agreement, and the rights and liabilities of the parties hereto, shall be governed by the laws of the State of California.

32. FORUM. Any litigation or arbitration to enforce or interpret the provisions of this Lease Agreement or the parties' rights and liabilities arising out of this Lease Agreement or the performance hereunder shall be maintained only in Contra Costa County, California.

33. TIME OF ESSENCE. Time is of the essence in the performance of all obligations under this Lease Agreement.

34. NECESSARY ACTS. Each party to this Lease Agreement agrees to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Lease Agreement.

35. LOCATION OF HANGAR SPACE. The location of the Hangar space is:

Hangar B-6, Camarillo Airport

OCCUPANT:   By: _____
            Olga Usova/Dream World Partners
            Its: _____

LESSOR:     AIRPORT PROPERTIES, LLC
            By: _____
                Gerald T. Alves
            Its:   Manager



Ex. A, p. 9